Good morning. Good morning. May it please the court, Tom Daniel of the Honolulu firm of Gelbert, Gelbert & Ingersoll, on behalf of the estate of Gertrude Saunders. In its opinion below, the tax court cited the Ithaca Trust case for the principle that post-death events are not considered in valuing assets, saying that Ithaca Trust established the essentially undisputed rule that an estate, so far as may be, is settled as of the date of death. And in fact, Ithaca Trust initiated a body of jurisprudence, which has been developed largely by this court over the past 85 years, which holds that, or recognizes that a viable claim, such as the Stonehill claim in this case, that is actually pending at the decedent's death, must be valued, estimated, based on the information that exists as of the date of death. You're talking about Shapiro, right? Well, yes, Your Honor, Shapiro is... Is there any case besides Shapiro that says what you contend? Your Honor, I believe that the Ithaca Trust case that... Well, I don't think Shapiro exactly says what you said it says. And the reason that I'm saying that is I think our reversal in Shapiro was based on the district court's mistaken interpretation of Nevada contract law. And so I think, couldn't the district court still have reached the conclusion on remand that the value of the claim against the estate could not be reasonably ascertained? Or was it somehow precluded under Shapiro? I don't think Shapiro really... You know, I think you're sort of conflating that and reading Shapiro differently than I do. I don't think Shapiro was reversed, reversed everything else. I don't think it changed the law on that. Well, Your Honor, Shapiro lines up on all fours with this case except for the issue with respect to whether there was consideration for the contract claims. And that's because the Section 2503, the deduction section, has a Section C that specifically requires... Shapiro was reversed because it had found that the contract claim was not... I mean, that there wasn't consideration. But Shapiro... It didn't really change how we view everything else. It was a contract claim problem, not really... You know, I don't think it changed how you look at a disputed claim, whether it's ascertainable or reasonable to a degree of certainty for purposes of deduction. Well, I think, Your Honor, that Shapiro... I mean, two things about it. One, Shapiro cited the very regulation which is at issue in this case and held that on the basis of that regulation, that the girlfriend's claim had to be valued as of the date of death without taking into account anything that occurred after that, including the settlement of the matter, which was fully known to the court. And then secondly, this court, in the NAAFI case, cited Shapiro as a case that was not contingent. And so, according to the probstra analysis that the NAAFI court articulated, is ascertainable with reasonable certainty and not subject to taking into account events that occur after death. Shapiro did not have to grapple with the question of reasonable certainty. That was a situation where the girlfriend provided various services to the decedent, which could be valued. Here you have a claim of malpractice that the court felt could not be valued with any kind of reasonable estimation. So was the court required or the commissioner required to accept the inflated value of the decedent's experts? Your Honor, the claims that were alleged in the Stonehill claim for legal malpractice, breach of duty of confidentiality, breach of duty of loyalty, and... The court couldn't value that. Those claims, each of those is well recognized as a tort and regularly enforced under the laws of the state of Hawaii. And the reason that in this case... Regularly enforced, questions of trust law, malpractice of trustees, but never in this kind of a situation. In order to prove a legal malpractice claim, you have to prove that the underlying claim would have been successful. Very difficult to do. You'd have to prove all kinds of information that was not available and was not cited and there was no evidentiary support. The court concluded that there was no ability to have a reasonably certain valuation. And just like in accountants, accountants can't take a reserve if there's no reasonable, valuable, reasonable, ascertainable value. They couldn't take a reasonable, ascertainable value here. Your Honor... What was this breach of loyalty that the lawyer told the tax authorities that something could be taxed, something that was hidden before that was now to be disclosed? That's the breach of fiduciary duty you're talking about. How do you value that? Your Honor, the attorneys for the estate of Stonehill had provided William Saunders, Jr. with documentary evidence taken from the files of the FBI and the IRS and confidential memoranda that appeared to show that William Saunders, Sr. had acted as an informant for the IRS. And the estate at this time had no idea what to, how to rebut this. Ultimately, the estate paid what it had to pay. What had been hidden now became disclosed, and the tax that was due was paid. How can you form a damage claim on that basis? No. What's the damage there? I could have kept it hidden and the government wouldn't have known? Your Honor, the estate tax is a transfer tax. It's a tax on the value of the property that a decedent passes at the moment of death. It's not a tax on the inheritance that the beneficiaries receive. And the fact that the estate of Saunders, that the attorneys for the estate of Saunders did an extraordinary job at extraordinary expense. It cost $2 million, and there was a jury trial in the case. The fact that they were able to get the resolution that they were at that time has no bearing at all on what the facts that were known at the time and what the value of the claim as of the date of Gertrude Saunders' death were. But if you look at the numbers, it went from 1 million to 90 million, from 19.3 to 30 million. You know, I guess if I were, you know, what I would argue is, how can it be reasonably ascertainable if there's that wild a range? That just seems like everyone's guessing if it could be 1, if it could be 90, and then, of course, after the fact, we know that it ended up being 250,000. Settlement, I guess, or whatever. Your Honor, I might mention that I did aspire to be able to have some time for rebuttal. All right. Save it for rebuttal. Okay. You have a minute. Well, no, if you keep going, you don't have it. You don't have to answer my question. It wasn't a question. It was just a comment. So why don't you sit down, and we'll give you time to see what the IRS says. Okay. Thank you. And I'll give you time to respond to that. Good morning. Good morning. May it please the Court, my name is Jennifer Rubin, and I represent the Commissioner in this case. Because the stipulated facts in the estate's expert report established that the outcome of the Stonehill claim was simply too uncertain prior to the settlement to satisfy Treasury Regulation 20.2053-1B3. The tax court correctly upheld the notice of deficiency here. And that's really the question that the Propster and Marshall Nafee line of cases says you have to look at. Look at the date of death, and you say, was the estimated amount ascertainable with reasonable certainty and will be paid on the date of death? Well, okay. I guess from what I just sort of said, I was just sort of saying, if you're going 1,090.19.3, whatever. Well, if potential deductions must be disallowed where there is a range in the estimated value of the claim, you could find that in every case. So wouldn't that necessarily mean no disputed claim can ever be deducted? Wouldn't this interpretation render Section 20.53 superfluous? I mean, you know, because you could always create some sort of range. So that can't be the right answer just because there's a range. There's actually two answers here. The first of which is that there are claims that are considered to be sufficiently certain for state tax purposes. That's the language, almost exact language from the State of Van Horn. And actuarial estimates are considered to be not uncertain, I believe is the language, not uncertain for state tax purposes. Propster is another example. In that case, they believed that even though there was this lien on this property and there was a technical dispute about it, at that point in time, at the point of death, they didn't think they had any defense. They didn't believe that the plaintiff in that case was able to compromise the claim. And therefore, there wasn't a range. But when there is a range, it's not deductible at the time of death, but the regulation provides a relief for it, a safety net sort of thing, where you can come back later and say, hey, this claim was disallowed because it was too uncertain at the date of death. However, and this is something that Propster got right, that all these other courts in the Fifth and Eleventh Circuit just didn't get right, you come back later and say, I want that post-death relief. And that's what the estate of Saunders got here. That's what the regulation gives. So theoretically, there could be no value for the deduction. Can we take this off? There could be no value for the deduction at the time of death because it was not reasonably ascertainable, but we'll allow the deduction because in time, we were able to liquidate it for a certain amount, and you'll get that benefit. Exactly. And that's the one you're saying. The IRS doesn't come back and say, let's say the jury came back with 90 million. Do you get to do the 90 million then? Yes. They don't say, like, if it's a really good number for the? No, this is a very fair rule. It's a very equitable rule. I mean, and that's the only real distinction, really, between the Ithaca Trust line of cases and this line of cases, is that there was no safety net in the Ithaca Trust line of cases. If you were sufficiently certain at the date of death, you got that charitable deduction. But if it wasn't sufficiently certain, as it wasn't in Sternberger, Hume, Hensley, Merchants National Bank, even if you thought it was extremely likely that the charitable contribution would be a certain amount, you didn't get that charitable deduction at all, even if the charity ultimately got the money. You'd have to make a further application for a refund. You wouldn't even get that. You couldn't get the deduction at all. And ultimately, you know, you look at especially, let's look at Merchants National Bank. It said even the valuations that the market would be willing to act on are not sufficiently certain. You look at Hensley, and it says even if the likelihood of a failure of this charitable deduction is, quote, remote, that's not sufficient. Why don't you address, I think Appellant seems to be the cases that Appellant considers the most favorable are Shapiro and Nafee. What implications do they have on this case? Well, you know, I tend to agree with the statements that were made during the opening argument, which is that Shapiro did not address this question. But what it was really addressing was finding by the court below that the claim failed because of a lack of consideration. There's some language about we're going to remand it, you know, and you need to decide this based on the date of death. But it didn't even really address the contingent. Well, Shapiro didn't really address the merits, did it? On remand, the party stipulated to a motion to dismiss with prejudice. Right. There was a settlement below, is my understanding, and so they never got to it. It is not that Shapiro has been cited in scores of cases since many of them are currently pending for the very proposition that the petitioner uses it for, right? Notwithstanding the fact that's not what the case went down on, but there's a paragraph and a footnote. Right. It seems to call into question our existing law, question whether a three-judge panel can do that, but it does seem to call that into question, and there are lots of cases that are out there. Do you agree that that has created any issue for the service that perhaps need to be addressed or the fact that you've changed the regulation now effectively, what is it, as of 2005 or whatever, that this issue is not going to come up again? Well, I do agree that addressing it would be helpful for the service because there are still claims in the system. I'm not sure it's actually scores, but there are claims still in the system. I actually felt like Marshall and Maffey did resolve this issue. It pointed out that Shapiro didn't deal with the question. It pointed out that Shapiro did not address disputed or contingent claims or really, really go to the heart of what Probstra held, and it specifically stated, citing case law from this Court, saying under the prior precedent rule, the three-judge panel in Shapiro could not have overruled Probstra. And that, I think, goes very much to the argument that my opponent's making about contingent or disputed trying to make it seem as though previous cases after Probstra have dropped the or disputed part of its holding. As Marshall Maffey held, the holding is contingent or disputed claims can be, are supposed to be under the regulation evaluated based on post-death evidence. Namely, you get the post-death relief if an uncertain claim becomes certain after death. And it is very clear from Marshall Maffey that it believes that that is still the law. It quotes it several times. I think there's at least three times where it uses the language contingent or disputed. And certainly no case has stated that it is trying to overrule Probstra, but in all events, it can't. This Court said so in Marshall Maffey, and this Court's right under the prior precedent rule. But moreover, even if today you were to sit here and say, I want to do a complete fresh look at everything, the fact is the regulation says an uncertain claim at the date of death cannot be deducted. You can come back later and get post-death relief on the claim. And that is what the regulation says. If you apply the Ithaca Trust line of cases, the full line of cases, then those principles tell you that if it can be judged by something as certain, sufficient certainty as an If you've got an expert coming in here and saying there's nine different scenarios, depending on when it settles, whether there's a dismissal, whether it gets reversed on appeal, there's all these different amounts that could come out. I mean, if you look at ER 129 to 130, which is the decision tree analysis of their expert Schwab, I don't see how anyone could say this claim is not uncertain. Are there any further questions from the Court? There don't appear to be further questions. For the reasons stated in our brief, we urge this Court to affirm the tax court's decision. Thank you. Thank you for your argument. You essentially have 56 seconds. Your Honor, the regulation provides that an uncertain estimate may not be deducted, but it does not provide an uncertain claim. And in the Nafee case, this Court looked at three different instances where the claim that was filed in pending as of the date of the decedent's death was a lawsuit. And in each of those cases, this Court found that the, well, it cited Smith and O'Neill as cases with a pending lawsuit that were not contingent. And it cited Shapiro to the same effect. Each of those three cases, it involved a lawsuit that was pending at death. And consistent with the Nafee analysis, this Court would have to find that the Stonehill claim likewise was a certain and enforceable claim. What is the judge to say you can't consider post-death defense? Considering an uncertain claim. What is the judge to say you can't look at post-death defense? Quite another, not the same kind of precedent at all. In terms of the claim case, when did Dr. Wilkinson argue? Your Honor, the tax court has recognized repeatedly that lawsuits can be valued and has identified a method, the method that was employed by Mr. Schwab in this case, as the method that can calculate and that the Court relies on to calculate a value. There's a difference between valuing a lawsuit as an asset of the estate and the section from which that comes, and valuing a lawsuit for purposes of a deduction. The statute and the regulations are quite different on that. Aren't you conflating those two? Well, Your Honor, I don't think that the regulation that addresses how one deducts estimated amounts sets a different standard of value. There's, and in fact, Then valuing it for purposes of what is included in the assets of the estate? You're saying those are the same? Your Honor, I'm saying it's the same standard of value. And in fact, the Van Horn case demonstrates this because in Van Horn, the Court upheld an estimate as of the date of death. It was based on actuarial tables that are issued under Section 2031, which is the inclusion statute. It upheld a deduction under Section 2053. Is your question answered? It's answered. All right. You're in overtime, and you've answered the judge's question. So thank you. This matter will stand submitted.
judges: Hellerstein, Callahan, Smith